The
Ch. Justice,
having b'een formerly counsel in the cause, delivered no opinion.
Ford, J.
The plaintiff owns land on a stream of water, cal-
led Muddy Run, on which he has had a grist-mill from the year 1806, nearly thirty years. ■ The defendant owns land on the same stream, next below, whereon he recently built a mill, that is, in 1824, and put a dam or stop across the stream, which stop he erected on the upper part of his farm, and within 45 feet of the .plaintiff’s line. The stream being . very sluggish, so that the plaintiff’s two wheels could seldom be used at the same time, and finding the fall in the stream equal to twenty:two inches on bis own land, he published his intention to lower his mill-wheel, and the bed of the stream, as’ far as it run on his land, and employ those twenty-two inches as head ; accordingly he had given orders for effecting this improvement, before the defendant took a step towards building a mill below; and when the defendant *75 ¡commenced that work, which excited in the plaintiff strong apprehensions from back water; the defendant gave assurances that it should not injure him, and disclaimed all right of flowing the water back on him. He then put the stop across the stream, winch turns it into an open canal, cut for the purpose, and is said to afford a freer and better vent for the water than the natural course. The plaintiff insists, that this stop occasions back water, several inches high, on the sheathing of his wheel, half a mile above it. The defendant insists, that it backs the water, only, three hundred yards j that dead water on the sheathing of ¿he plaintiff’s wheel is a false pretence j or it arises from the plaintiff’s wheel being sunk in a hole, which is lower than the bottom of the race-way j or because the race-way contains artificial obstructions, arising from an accumulation of sand bars, hushes, leaves, and mud, which require only to be cleaved out There were fifteen witnasaes examined between the patties, aod great conflicts of opinion. The jury found this stop to he nc detriment to the upper mill, and gave a general verdict for the defendant. The plaintiff moves to have it set aside, on the single ground of its being against the weight of evidence. That the court have a legal discretion to set aside verdicts which appear to them to be clearly against the weight of evidence, is not deniable. 2 Pen. 578. 2 Archb. 253. A new trial only permits the matter to be deliberately reviewed, by another jury, for the better satisfaction of the court, and parties, under the advantages of a fuller and better preparation, on both sides, as it respects both the law and the facts.
Now the weight of evidence on the part of the plaintiff, constrains me to be in favor of a new trial, in order to afford a careful review of the opinions of those fifteen witnesses, so highly conflicting together, and of the reasons, which they assign for their differences They were all credible, without one of them being impeached for want of veracity, and though nine of them swore fully to their belief, that the plaintiff was greatly injured in his mill, by means of the lower stop, the jury found a verdict against all their opinions, the other way j but, still, it was according to the opinions of five witnesses, who differed from the other nine. Now if these are weighed merely as opinions, dissonnected with the reasons assigned for them, their weight is Heady as two to one against the verdict. But J do act lay much *76 stress on this argument, because a single opinion, supported by facts and good reasons, may reasonably outweigh two or three contrary ones, that are destitute of such support. This renders it necessary to examine, with some particularity, the reasons and facts on both sides.
Joseph Snedaker, a witness on the part of the plaintiff knew the fall,on the plaintiff’s land.by the best possible opportunities, because he was one of the persons who dug out the bottom of the stream, from the division line to to the upper mill; and he testifies, that they kept the water running downward, through every step of their progress, till they got up to the sheathing of -the plaintiff’s former wheel, and that they came up twenty-two inches below it; and when the sheathing was lowered that twenty-two inches, the water stili had a continual fall, through every inch of the plaintiff’s land, down to the line between him and the defendant. Now the digging and levelling the bottom of this brook, was a , work of some publicity $ it took place at a country mill; it must have consumed some time; and may have been inspected by all the neighbourhood, yet not one of the defendant’s six witnesses- had the occular demonstration of this man, nor does one of them impeach his veracity, or deny the facts which he thus establishes. Robert Quigley is another witness for the plantiff, who worked at the same business, along with the witness last named, and confirms his statement in all things. Thus after lowering the plaintiff’s wheel twenty-two inches, there remained a clear fall from it, through all his land, to the defendant’s line. If these two witnesses needed corroboration, I think it would be found in Joseph Keeler, the mill-wright j he began to lower the plaintiff’s wheel, before, the defendant’s stop was erected, and while the fall in the plaintiff’s land was perfectly visible 5 be therefore not only could see, but it was his professional duty to see, whether the fall was clear or not | and he swears that he placed that sheathing a little above the ■water. It could not possibly have been below the bottom of the race, (or as the defendant alleges, in a hole) for then it could not have been above, it must have been below the surface of dead water that did not flow off. Neither of these witnesses has any connexion with the plaintiff’s family, that I perceive, nor any apparent tie but truth. They do not testify merely to opinion, which we well know may be a little capricious, but they state *77 what are sometimes denominated stubborn facts, since they are not contradicted by any other eye witness, nor is their veracity impeached. Moreover the plaintiff gave orders tó his workmen to drive up the bottom as nearly on a level as would consist with the smallest descent for water; and it must he merely gratuitous, that they reversed this order, and made the upper end the lowest, so as to place the mill in a hole, or in other words, that they made the water absurdly run toward the wheel, rather than downward from it.
There is no dispute worthy of notice, in relation to this present argument, touching the heighth of the defendant’s stop, for though the witnesses differ about if as to a few inches, we shall assume the minimum which was twenty inches. Now when the upper mill began to work, it soon raised the water down at this Stop to the top of it, and it was filled for the benpfit of the mill below; if it had not fdled, it would have been there to no purpose. Whether these twenty inches of obstruction, could be ■any detriment to the plaintiff’s mill, would be best known to those, who had the best knowledge of the fall above; and as none of the defendant’s five witnesses, had been concerned in adjusting that fall, their mere opinions were little superior to conjectures, made in a state of ignorance and darkness, compared with the exact intelligence of those witnesses who had adjusted this level, inch by inch, from the line, all the way to the sheathing of the upper wheel. If this verdict is not therefore against the weight of evidence, both as respects numbers and the best means of information, there is something in it at least mysterious.
The opinions conflicted chiefly about the extent of the back water, occasioned by this stop; those of the plaintiff’s witnesses, saying it extended back to the mill, which those of the defendant would by no means admit, nor would they allow that it made the water back more than 300 yards; but to this extent they admitted the fact, and pointed out a sand-bar as its termination, where they spoke of a ripple in the water. Now only fifteen yards of these three hundred were on the defendant’s land, the remaining two hundred and eighty-five yards of swell were on the plaintiff; and if the distance to the upper mill be half a mile, or eight hundred and eighty yards, then two hundred aud eighty-five yards arc nearly one third of the whole way. *78 that it was confessed to make back water, in this sluggish stream, and on the plaintiff’s land, thus taking away one third of the fall that belongs to bis land, and for the enjoyment of which he had incurred two heavy expenses of levelling his race way for half a mile, and of new modeling and lowering his mill. There was no case cited at the bar, which takes away from an owner, this fall of water on his land, which is commonly valuable, and sometimes almost inestimable. And if there is no law which authorises an adjoining owner to take it, without grant, conveyance, or consideration, to his own use; what difference can there be In principle, between taking away the whole fall, or one third of Itj for the owner of the whole, must be such of all the parts. ec .Every proprietor who claims a right either to throw the water back above, or to diminish the quantity of water which is to descend below, must in order to maintain his claim, either prove an actual grant, from the proprietor affected by his operations, or must prove an uninterrupted enjoyment of twenty years.” Simons and Stuarts Rep. 190. 3 Hals. 149. It cannot be pretended, that by lowering the plaintiff’s wheel, he diminished or increased the quantity of water descending below, or varied it in the smallest degree.
When the dam had made back water, three hundred yards above, the defendant’s witnesses testified that there it stopped, at a bar in the race, but they neither shewed the heighth of this bar, the materials that composed it, nor, the cause of its formation. If the heighth of it was three or four inches, the. water might flow back to the upper wheel, iu case this bar was removed, as the plaintiff’s witnesses assert that it does in fact. The great question in my mind is, how the bar got there, after every thing, of the kind had .been removed, by the two witnesses who levelled it upj if they speak the truth, it must certainly be a recent formation ; and what more likely cause can be assigned for its formation, than that this is the point at which the current frequently meets with dead water, and deposits its sand and sediment ? On the whole it appears to me, that the merits of this cause deserve to be reviewed, and that the rule for a new trial ought to be made absolute.
Drake, J.
This is a controversy between mill owners on the same stream. Their lands adjoin each other, and their milis are *79 from one to one and a half miles apart. The plaintiff’s mill is highest up on the stream, and has been in operation since 1808. In 1822, the mill being out of repair, the plaintiff began to make preparations to repair it, and conceiving that he had not taken the full advantage of the fail of water on his land, determined to sink bis mill. Preparatory to which, he caused his tail race to be cleared out, commencing at, or near, the division line between him and the defendant, and deepening it as it approached his mill, and reducing it nearly to a level, leaving a gradual descent from the mill, merely sufficient for the water to run off By this, he gained, as he was Jed to believe, nearly two feet of additional fall. In April 1834, he sunk his mill IS inches. A little previous to this, the defendant put a stop, or obstruction, in the natural stream, about fifty feet below the division fence, with the view to raise and divert the water, through a race dug from the stream between the stop and division fence, and running down about half a mile to the mill site of the defendant s upon which he soon after built a mill. This obstruction raised the water in the natural stream, according to the plaintiff’s witnesses, from fifteen to twenty inches. And one of them testifies, that the water, at the lower end of the plaintiff’s tail race, 143 feet above the division line, was raised by means of the obstruction about 18 inches. From which it appears, that there was little or no fall between that point and the stop. And the defendant’s witnesses admit, that the stop caused the water to flow back two or three hundred yards, but they say hut little, directly, as to the height, to which the water was raised by it. One of them, how-ever, says that he measured the water below the stop and found it 12 inches deep, when it was 18 or 20 above. The fact then in clear, that by means of the stop, or obstruction, the water war; thrown back upon the plaintiff’s land, for a considerable dis - tance, to the depth of from 8 to 20 inches.
A question of Jaw here presents itself of great and growing ¡, importance in New-Jersey ; where waterpower, for the turning * of machinery is already so much used, and where this applies- j lion of it is constantly increasing. And I do not consider it ne- j! cessary in this case, to examine the numerous, and in some // measure conflicting cases, which have been decided in various} courts, relating to the holding back, letting down, diversion, or other nse of waters, by land or mi'! owners, to the prejudice oí *80 others lower down on the same stream. I put this case upon the ordinary principles applicable to land. The owner of which has a right to its full enjoyment, in any fair way that its situation admits of, without interference from any other person. If a stream of water run through it, and there be, from the place, where it enters into, to the place, where it issues from, his land, a fall which can be advantageously improved, he has a right to make that improvement, to the full extent that it admits of. If the waters are damned below, and flow back, it is a tresspass.. If they overflow his lands, damages are immediately recoverable. But it is an invasion of his property without any overflowing of the banks. And if he wishes to build a mill, he has a right to make his improvement with reference to the fall of the natural stream ; and if upon digging out his tail race, the water, by reason of a dam below, shall flow up his race and impede his mill, he has a just claim to damages to the full amount of the injury-received. Twenty years adverse enjoyment by the mill owner below will bar his claim, as in other cases of adverse possession of real property. This is the only safe principle, applicable to this subject. To found the right merely upon occupancy, would he to throw open the whole water power of a river to a scramble for priority. And what shall be an occupancy ? The building of a dam, and raising of the water ? To make this naked act the foundation of a valuable right of property, would have no semblance of public policy to justify it. Shall it be the commencement of the building of a.mill ? What is its commencement ? Shall it be its completion ? Then the most important: improvements, which require considerable time and great expense in constructing, are liable to be cut off and rendered useless, by an edifice raised in a week, and at a cost of fifty dollars.
It being then a clear case of invasion of the plaintiff’s property, and it appearing also beyond doubt, that his mill was obstructed in its operations by the flowing back of the water, the only question before the jury was, whether this damage was occasioned by the stop, or by the plaintiff’s own negligence in clearing out his race ; and I would observe, preliminarily, that the defendant, by flowing back on the plaintiff’s land was certainly in the wrong, and did an act calculated to injure him, and sufficient in' itself to produce the injury complained of, and which inevitably must, in whole or in part, have caused that in *81 ¡uiy, if the plaintiff did, as he. intended to do, sink his mill low enough to take advantage of his whole fall of water. Under such circumstances, upon the question as to the real cause of the mischief, a very slight preponderance of evidence is sufficient to justify a verdict against the defendant
There is so much contradictory evidence in this case, and so much which, if believed, would justify the verdict, that at first view. 1 felt some doubt about the propriety of setting it aside : hue upon closer inspection, there appears so much reason to believe that justice has not been done, that I think it a proper case for the exercise of this power of the couit. Enough has been sworn to by the defendant’s witnesses to justify the verdict, yet soma of their opinions are so contradictory, and some of their facts so doubtful, when viewed in connexion with other established facts, that great suspicion rests in iny mind upon the correctness of many material parts of their testimony. For instance, one of them says ; “ The making of the back water arises frota the race being filled up. 1 do not think the stop is hurtful to plaintiff’s mill. I think the stop could not back up the water, if ths race was wide and deep enough to carry the water away.” Audi yet the same witness says; “ The plaintiff sunk his mill too low without a doubt, unless ho got the right below.” In the opinion of this witness then, the water would flow off from the plaintiff’s mill totally unobstructed, if his tail-race was properly cleared out, (although probably one foot of his fall is taken by the defendant,) and yet he comes to the conclusion, that he sunk his mill too low. The same idea is held out by another of the defendant’s witnesses, who says, that he advised the plaintiff to settle his mill two feet, and get the right so to do from the defendant ; yet if it t»e true as tha same witness says, that the widening and clearing out of the plaintiff’s race “ would prevent this water backing on him, and if, would never injure him in the world,” iho plaintiff had & right to sink Isis mill more than two Feet, without getting any liberty from the defendant at all, and could have enjoyed it when sunk. I will mention another.’ of this witness’ opinions. Although, he says, that after the raising of the step, “ k hacked water about MOO yards,” (that is about 285 yards on tku pkbitifF’s land,) “ when the mill was still,” and although he further íesuíieE, that “ the height of water is affected ¡wl is mw or hun high. »= ths mi!?, steve is w not, *82 at work,55 which is unquestionably true, yet he is not only sure that the plaintiff sustains no injury by this, flowing back of the water> not even 10 the increased difficulty of clearing out his race, but goes so far as to say, that “ he considers this an improvement to his mill.” These witnesses were well acquainted with the premises, and from their occupations might be considered well qualified to judge in this case, and no doubt had ara influence with the jury, beyond what a careful examination of their testimony appears to justify.
But again, this stop was placed a very short distance below the division line between the parties; and it is fairly to be gathered from the testimony, that there was no fall between the line and the stop. If this be so, the stop cannot benefit the defendant without invading the rights of the plaintiff. If it add one inck to the head of the defendant, it takes that inch from the fall of the plaintiff. It was the defendant's object in creating this obsuaction, that it should increase bis head of water, and the evidence is distinct and conclusive that it does so, and that the water is thrown back upon the plaintiff’s land. Here is a clear invasion of the plaintiff’s rights, and a sufficient cause for all the injury he received. And when a long list of witnesses, united in ascribing the actual injury solely to this cause, while the defendant’s witnesses ascribe it solely to the foulness of the race; and when there is so much reason to believe it was in some measure owing to both causes, and this is the best mode of reconciling the testimony, I cannot but think that the weight of evidence strongly inclined to the side of the plaintiff.
This, in some cases, would not be sufficient to disturb a verdict. But, in this case, the controversy is important, there is much reason to believe that justice has not been done; the evidence is flatly contradictory on points, where the truth'is capable of being shewn with certainty ; which the parties, on a second trial, may be able to do; and which, on the first, they have not been prevented from doing by negligence ; each having made ■a reasonable preparation for the trial; but each, no doubt, being disappointed in the adverse testimony, especially upon several points where the evidence is so contradictory, that the witnesses, upon one side or the other, must have grossly mistaken or wilfully ¡misreprented the facts.
Let the rule for a new trial be made absolute.